UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

COLEMAN JOSEPH FENTON, JR.,  )
                                        )
                                        )
v.                                    )    Criminal  No. 02-57-P-S
                                        )
                                        )    Civil No.   05-181-P-S
UNITED STATES OF AMERICA,  )
                                        )
                                        )

**RECOMMENDED DECISION ON MOTION TO REOPEN
28 U.S.C. § 2255 PROCEEDING**

      Coleman Joseph Fenton is serving a long sentence for violations of federal drug, firearms, and explosive laws. Fenton pursued a direct appeal to the First Circuit presenting multiple grounds, some of which are re-presented here.  The First Circuit affirmed in part, vacated in part, and remanded for re-sentencing.   Through counsel, Fenton filed a 28 U.S.C. § 2255 motion raising six grounds.  In a February 2, 2006, memorandum I recommend that the Court grant the Government's motion for summary dismissal on the grounds that it was untimely.  That recommendation was adopted. Fenton has now filed a Federal Rule of Civil Procedure 60(b) motion to reopen his 28 U.S.C. § 2255 proceeding.

*Discussion*

      Fenton's version of his interactions with his retained 28 U.S.C. § 2255 attorney is very troubling.  With respect to counsel's conduct during the pendency of the 28 U.S.C. § 2255 motion it was evident that there were representation issues gauging by counsel's own on-the-record filings.  In my recommended decision I noted:

> Fenton filed his 28 U.S.C. § 2255 motion on September 28, 2005. I issued an order to answer giving the United States until December 28, 2005, to file an answer or otherwise respond to Fenton's motion. The United States filed its motion to dismiss on December 27, 2005. Fenton's response to that motion was due January 17, 2006. On January 16, 2006, counsel for Fenton filed a motion to extend time to respond to that motion, indicating:
>
>> Counsel for the Petitioner requests that this Court extend the time within which he must respond to Defendant's Motion to Dismiss by ten days, to January 24, 2006.
>> As reasons therefor, counsel states that he has been ill and unable to work from January 7, 2006, to the present, which constitutes approximately half of the time within which he was required to answer. The government's motion was filed on or about December 27, 2005.
>
> (Pet'r First Mot. Extend Time at 1, Docket No. 11.) I granted that motion, allowing Fenton the extra ten days. (Docket No. 13.) On January 22, 2006, counsel filed another motion to extend time to file a response. This motion explained:
>
>> Counsel for the Petitioner requests that this Court extend the time within which he must respond to Defendant's Motion to Dismiss by seven days, to January 31, 2006.
>> As reasons therefor, counsel states that this Court previously extended the time for responding by seven days due to counsel's illness. Counsel is seeking a second extension of seven days for the same reasons. Because of his illness during the period within which to answer the Government's Motion, counsel was unable to respond within that period. Counsel is in solopractice, and as a result of his recent illness requires an additional seven days to effectively respond. This would mean that the time for responding to the Government's Motion to Dismiss will have been extended a total of fourteen days. The Government will not be prejudiced if this motion is granted.
>> Furthermore, counsel states that he will not make any further requests for extensions to answer this Motion.
>
> (Pet'r Second Mot. Extend Time at 1, Docket No. 15.) January 31, 2006, has now come and gone and there has been no response to the United States' motion to dismiss.

Fenton v. United States, Civ. No. 05-181-P-S, 2006 WL 275509, 1 (D. Me. Feb. 2, 2006).

Accompanying Fenton's motion to reopen is an affidavit by Fenton that represents the following:

1. I am the defendant above named.
2. That following affirmance of my conviction by the First Circuit Court of Appeals, I employed attorney H. Ernest Stone, of South Hamilton, Mass., to act as my counsel in pursuing post-conviction remedies, i.e., filing a petition pursuant to 28 U.S.C. § 2255, et seq. Due to my incarceration, it was necessary for members of my family to participate in these discussions. I forwarded various materials to Mr. Stone, and on March 25, 2004 I received correspondence from him (Exhibit "A"). The requested retainer of $7,500.00 was forwarded to Mr. Stone by my brother, Mark C. Fenton, on May 17, 2004. Following additional correspondence, Mr. Stone requested an additional fee of $35,000.00 to act as my post-conviction attorney. Consequently, on March 24, 2005 the total consideration was paid to Mr. Stone. (Exhibit "B" and "C").
3. During negotiations with Mr. Stone, various items of evidence were provided to him by both myself, and members of my family. Mr. Stone became very enthusiastic about my chances of prevailing in a § 2255 petition, and communicated those beliefs to [Fenton] and family members. In addition, Mr. Stone stated that a private investigator, Donald Picard, would be assisting him in his investigations and preparations.
4. That following payment of the $35,000.00 to Mr. Stone, this affiant spoke to him on a single occasion, which occurred in June of 2005. Thereafter, affiant was unable to make contact with Mr. Stone through the telephone. Affiant used his brother, Greg Fenton, for messages, because Greg and the private investigator, Donald Picard, were acquaintances. The private investigator attempted to keep Greg current on the progress which Mr. Stone was making in my case. At no point did the private investigator ever advise my brother Greg that the petition filed by Mr. Stone had been dismissed. Therefore, I was totally unaware that the court dismissed the § 2255 petition until subsequent to Mr. Stone's visit to the U.S. Penitentiary in Terre Haute on 09-30-07. The private investigator continuously assured my brother Greg, that everything was proceeding smoothly and that Mr. Stone was tending to my concerns.
5. Following Mr. Stone's attorney visit on 09-30-07, at the Terre Haute prison, I learned that he fabricated a story about the prison's guard drawing weapons on him and not permitting him to re-enter. Mr. Stone was supposed to return late in the day for additional attorney's visit to discuss my pending case. However, he failed to appear as promised. Mr. Stone later explained that the reason for not returning was that the guards drew their weapons and e[s]corted him off the

      prison grounds due to some misunderstanding.  When this affiant questioned the Warden about the alleged incident, the Warden denied it occurred, and further stated that the officers do not carry firearms.

6. Following the attorney visit of 09-30-07, I terminated Mr. Stone as my attorney and requested return of all items of evidence, pleadings, and documents possessed by him in connection with my litigation.  Mr. Stone refuses to either provide me with the requested material, or to answer my correspondence.  When my brother Greg confronted the private investigator about Mr. Stone's behavior, the investigator responded by saying that the requested [material] was evidence and could not be returned.  In addition, the investigator attempted to justify Mr. Stone's behavior, and lies, by stating that I had expected as much, and that I had nothing to complain about.
7. That at all times during Mr. Stone's representation of me (2004-2007), I always believed that he was proceeding in an effort to have my convictions vacated.  Mr. Stone never indicated to me, in any manner, that he thought a § 2255 petition was without any merit, or that he had tried and failed.  I was led to believe that Mr. Stone was an attorney who could be trusted and one knowledgeable in "post-conviction" remedies.  Consequently, I placed the utmost faith and confidence in an attorney who told me that his grandfather was a U.S. Supreme Court Justice.

(Fenton Aff. ¶¶ 1-7, Doc. No. 20 at 5-9.)

Attached to Fenton's filing as "Exhibit A" is a March 25, 2004, letter by Attorney Stone indicating:

> Today I received a package of materials from you.  However I have not received my initial fee of $7500.00.  (Please note that this amount is not in addition to, but will count towards, the final fee.)  Until I receive the initial fee, I cannot begin to consider, review, investigate or prepare any aspect of the case.  Furthermore, until I do such initial work, I cannot file any appearance or commit to any petition on your behalf.
> In sum, if you would like Don and I to get moving on the case, please have someone forward the initial fee.  We will then do a preliminary investigation and give you a number for the whole job.  <u>I will remind you that you do not wait to get going, as the one year filing period comes quickly</u> and you have identified a lot of issues to pursue.

(Doc. No. 20-2 at 1)(emphasis added).   Fenton has supplied the Court with a copy of a bank check to Attorney Stone dated May 17, 2004, in the amount of $7500.  (Doc. No.

20-2 at 3.) Thus, Attorney Stone had materials from Fenton and his retainer before any of the three dates that the United States identifies as the beginning of Fenton's 28 U.S.C. § 2255(1) one-year limitation period. Fenton has also provided a copy of a cashed check made out to Stone in the amount of $35,000, dated March 3, 2005.

The only evidence that Attorney Stone did any work on Fenton's 28 U.SC. § 2255 motion is the September 26, 2005, untimely § 2255 motion which is five pages, containing six grounds, three of which were already decided against Fenton on direct appeal, one Apprendi v. New Jersey, 530 U.S. 466 (2000)/Blakely v. Washington, 542 U.S. 296, 303 (2004)/United States v. Booker, 543 U.S. 220 (2005) predicated claim that had already been rejected by the First Circuit in an earlier case[1], an ineffective assistance of counsel claim for not raising that Apprendi/Blakely/Booker argument on direct appeal that had no future given this Court's sentencing determination, and an ineffective assistance claim with regards to pressing Fenton's health issues as part of his defense and presenting a tape recorded message the tactical value of which is dubious. Beyond this, as noted in my recommended decision on the 28 U.S.C. § 2255 motion, counsel filed two motions to extend time due to his health which are not fairly attributed to or billed to Fenton.

Attorney Stone also had to address an order to show cause issued by the court on October 19, 2005, relating to his non-compliance with the local rule for counsel not admitted to the Maine bar. The Deputy Clerk contacted Attorney Stone on September 28, 2005, asking him to file a pro hac vice certificate and to become associated with local counsel. I also entered an order to answer which also directed counsel to notify the court

---

[1] See United States v. Fraser, 407 F.3d 9, 11 (1st Cir.2005); Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005) (decided April 15, 2005).

by October 17, 2005, about the status of local counsel.  Attorney Stone did not comply with that order and the October 19, 2005, order to show cause issued.   I gave Attorney Stone until November 14, 2005, to show cause why Fenton's appearance should not be entered pro se and Stone's name be removed from the case.  On November 14, 2005, Attorney Stone filed a motion for more time to show cause and to obtain local counsel and a pro hac vice certificate.  In his motion for more time, Attorney Stone represented:

> Counsel for the Petitioner moves this Honorable Court to extend the time by which he must show cause to November 28, 2005, so that he may associate with local counsel.
> As reasons therefore, counsel states that the criminal case that resulted in the conviction that the Petitioner is challenging involved numerous cooperating witnesses, and was related to numerous other prosecutions. To date, counsel has had difficulty in locating local counsel who did not represent a defendant or witness in the underlying case or related cases, and who therefore is free of conflict. Counsel is confident, however, that he can secure local counsel within the requested extension.

(Doc. No. 4.)    I granted Attorney Stone the requested extension.  On November 28, 2005, Attorney Stone filed a response to the order to show cause indicating that he had "secured an agreement" with a Portland, Maine attorney to act as local counsel and that the two attorneys would be discussing the case on November 29, 2005, and the Portland attorney would notify the court of his appearance at that time. (Doc. No. 7.)    The promised entry of appearance never occurred; instead, on January 16, 2006, Attorney Stone moved for relief from the requirement of Local Rule 83.1(c), explaining:

> 1. Counsel has made diligent and substantial efforts to obtain local counsel in this matter.
> 2. The criminal case that is the subject of this matter involved numerous witnesses and a lengthy investigation. Many witnesses cooperated with the government and several were themselves charged with crimes arising from or related to the charges against Petitioner.
> 3. Counsel has been unable to locate local counsel qualified under the Local Rule who is willing to serve or who does not have a conflict, either

6

>personally or through his or her law firm, arising out of the original prosecution.
>4. Several attorneys who initially agreed to serve as local counsel subsequently discovered after a conflict search that they had in fact represented a client related in some way to the Petitioner's case.
>5. Petitioner's counsel's office is within reasonable driving distance of the District Court, so his attendance at any hearings is not problematic.

(Doc. No. 12.)  I granted that motion on January 17, 2006, cautioning, "if counsel fails in any way to comply with the requirements of this court regarding hearings, pleadings, or any other matter, this Order may be subject to reconsideration."  (Doc. No. 14.)  On the same day I granted a motion to extend time to respond to the United States' motion to dismiss due to health issues.  Then came Attorney Stone's second motion to extend time filed on January 22, 2006, giving Stone until January 31, 2006.  Nothing was filed by that time and my recommend decision issued.  Attorney Stone did not file any objections to the recommended decision.

Given this history Fenton did not receive anything pertaining to his case directly from the Court or from the Government.  Therefore, it is very plausible that he was never informed of the status of his case.  The United States -- which filed four motions to extend time to respond to Fenton's motion to reopen -- has not provided me with any basis for doubting Fenton's claim about his ignorance and continued reliance on Stone up until the September 30, 2007, meeting.

Federal Rule of Civil Proceeding 60(b) provides:

>**Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>>**(1)** mistake, inadvertence, surprise, or excusable neglect;
>>**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

7

> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> **(4)** the judgment is void;
> **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> **(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b). I concluded that the above description of Attorney Stone's 'performance' in this 28 U.S.C. § 2255 motion "justifies relief" from this Court's February 22, 2006, judgment under subsection (b)(6).

I agree with the United States that if the grounds presented by Attorney Stone in the original § 2255 motion were the grounds that Fenton wants to have decided on their merits that the motion could be summarily dismissed based on the merits arguments made in the United States' motion to dismiss. See Benitez v. United States, 521 F.3d 625, 630 (6th Cir. 2008). However, included with this motion to reopen the 28 U.S.C. § 2255 proceeding is a pro se § 2255 motion that lists four grounds. The first is an ineffective assistance claim against trial counsel that has subparts spanning (a) to (s). Ground two is a charge that Fenton's constitutional rights were violated when his conversations with his trial attorney were secretly recorded. His third claim is that he was denied the process he was due when police officers planted various incriminating items in his residence and infringed his right to be "let alone" when they gained access to his private papers and thoughts. Finally, Fenton asserts that his appellate counsel was ineffective because she did not raise a double jeopardy argument pertaining to his having to serve a term of imprisonment on the 18 U.S.C. § 844(i) count (punishment) and forfeit real property (also a punishment in Fenton's view).

It is also evident that it would be pointless to require the United States to address any of the grounds in Fenton's pro se 28 U.S.C. § 2255 motion if the court were sure that the motion will be deemed dismissible because it is untimely. As I noted in my recommended decision, "In failing to respond to the United States' motion to dismiss Fenton has given the Court no basis to equitably toll, see Neverson v.. Farquharson, 366 F.3d 32 (1st Cir.2004), the statute of limitation." Fenton, 2006 WL 275509 at * 3.

"Attorney miscalculation" of the statute of limitations "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, __ U.S. __, __, 127 S.Ct. 1079, 1085 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-75 (1991).). "If credited," Lawrence explained, "this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline." Id.  But Fenton's description of Attorney Stone's conduct goes far beyond a claim of a negligent miscalculation of the statute of limitations period.

 In Trapp v. Spencer, the First Circuit examined a claim by a § 2254 petitioner who was seeking tolling due to his attorney's miscalculation of the § 2244(d)(1) limitation period. It reiterated its holding "that 'mistake by counsel in reading [AEDPA] or computing the time limit is, at most, a routine error' and does not constitute extraordinary circumstances warranting equitable tolling." 479 F.3d 53, 60 (1st Cir. 2007)(quoting David v. Hall, 318 F.3d 343, 346 (1st Cir. 2003)). The Panel then reasoned:

> In David v. Hall, a case quite similar to the one before us, the petitioner's attorney had misunderstood the calculation of the AEDPA limitations period and had filed a habeas petition after the limitations period had expired. 318 F.3d [343,] 344 [(1st Cir. 2003)]. Like Trapp's

9

> attorney, the attorney in David filed an affidavit stating that he could have filed the petition earlier but was under the impression that he was not required to do so. Id. at 345. David rejected the argument that equitable tolling was warranted, stating, "If carelessness were an escape hatch from statutes of limitations, they would hardly ever bar claims." Id. at 346.
>
> This does not mean, however, that attorney error never can be among the grounds for equitable tolling. Several of our sister circuits have, on specific facts, found an attorney's failure to file a timely habeas petition so egregious as to warrant equitable tolling of the AEDPA limitations period. For example, in Baldayaque v. United States, 338 F.3d 145 (2d Cir.2003), the Second Circuit found an attorney's failure to file a habeas petition when the petitioner's wife had hired him specifically to do so sufficient to warrant equitable tolling. Id. at 152-53. In Spitsyn v. Moore, 345 F.3d 796 (9th Cir.2003), the Ninth Circuit found that equitable tolling was appropriate when the petitioner's attorney ignored the statutory deadline for filing a habeas petition and refused, after having been terminated, to provide the petitioner with his case file, thereby causing him to miss the deadline for filing a petition. Id. at 798, 801. Moreover, both the Eighth and Second Circuits have found equitable tolling to be appropriate when an attorney deceived the petitioner by informing him that a timely petition had been filed when in fact it had not. United States v. Martin, 408 F.3d 1089, 1093-95 (8th Cir.2005); United States v. Wynn, 292 F.3d 226, 230 (5th Cir.2002).

Id. at 60. In a footnote in this passage the First Circuit does caution: "We make no determination about the correctness of the decisions that we describe here. We include them merely as exemplars." Id. at 60 n.5. The Panel also added the following guidance:

> We delineate here some of those factors that may influence a court's decision whether or not to grant equitable tolling in a habeas case. Under Pace and our own precedent, relevant factors include:
> > 1. The petitioner's own diligence in pursuing habeas relief, see, e.g., Pace, 544 U.S. at 419; Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir.2002);
> > 2. Whether some extraordinary circumstance prevented the petitioner from making a timely filing, see, e.g., Pace, 544 U.S. at 418; Neverson, 366 F.3d at 43;
> > 3. The petitioner's diligence in the pursuit of other post-conviction remedies and the process already afforded in the state system, see, e.g., Pace, 544 U.S. at 418-19; Delaney, 264 F.3d at 14-15;
> > 4. Any prejudice to the prosecution that would result from tolling and possible retrial, see David, 318 F.3d at 347;
> > 5. The fact that equitable tolling is not available in cases of dubious merit, see Lattimore, 311 F.3d at 55 (discussing likelihood

>of success on the merits in determining that equitable tolling was not warranted); Brackett, 270 F.3d at 71 (same), overruled on other grounds by Johnson v. United States, 544 U.S. 295, 302 (2005); and
>6. Whether or not the case is a capital case and whether or not the petitioner has been sentenced to death, see David, 318 F.3d at 346 n. 4.

Id. at 61(footnotes omitted). The magistrate judge's decision not to allow equitable tolling, the Panel concluded "based on consideration of the totality of the circumstances (including all of the factors enumerated above), was not an abuse of discretion." Id. (emphasis added).

Taking the totality of the circumstances approach and drawing the factors identified in Trapp relevant to a 28 U.S.C. § 2255 proceeding I conclude that Fenton is entitled to equitable tolling. The United States argues -- with respect to Fenton's Rule 60(b) efforts-- that Fenton was not diligent in filing this motion to reopen because he conceded that he fired his attorney on September 30, 2007, and did not file this motion to reopen until January 25, 2008, (the motion was signed on January 19, 2008). Given that Fenton is in a federal institution and his report that Attorney Stone refused to return his legal materials to him after the September 30, 2007, encounter, I do not view this less than four month delay as showing a lack of diligence. And there is also the question of Fenton's diligence following the hiring of Attorney Stone. From the uncontroverted evidence supplied by Fenton we know that he promptly paid the demanded $7500 retainer on May 17, 2004. By this date Fenton had already supplied Stone with material (which Stone seemingly did not review to ascertain whether or not Fenton had any meritorious 28 U.S.C. § 2255 claims until the submission of this sum). It is also evident that Attorney Stone impressed upon Fenton the need to retain his services so as to meet

11

the one-year statute of limitations. The judgment on Fenton's direct appeal entered May 7, 2004, which would be the earliest day to begin the statute of limitations calculations. Ten days later Attorney Stone had his retainer. The $35,000 check was dated March 24, 2005. Fenton's willingness to turn over $42,500 for purposes of pursuing the 28 U.S.C § 2255 motion and his enlistment of family members to assist with the undertaking, is an indicator of how serious he viewed the matter and an indicator of diligence.

      These facts tie into the second Pratt factor – is the conduct of Attorney Stone an "extraordinary circumstance" that prevented Fenton from timely filing his 28 U.S.C. § 2255 claims? And here is where the distinction between ordinary failures of counsel to account for the statute of limitations and the conduct of Attorney Stone is starkly evident. Attorney Stone knew of the limitation period from the get-go, he took a huge sum of money for preparing a 28 U.S.C. § 2255 motion with marginal grounds and filing it late, as he remained on the Court's docket as the responsible counsel, he was the sole conduit to Fenton of the information pertaining to the § 2255 proceeding and it appears that he was remarkably deceitful in his reports to Fenton and his brother.

      With regards to Fenton's pursuit of other post-conviction remedies, this is not a 28 U.S.C § 2254 inquiry and with his efforts to see his § 2255 motion filed and his lodging of this Rule 60(b) motion he has pretty much exhausted his avenues here. Also unlike a § 2254 case, the interests of the finality of the criminal judgment are directly measurable by the court of conviction, this is a contrast to the equitable tolling concerns in the context of challenges to state court convictions pressed in a 28 U.S.C. § 2254 proceeding. Compare Lawrence, 127 S.Ct. at 1085; Trapp, 479 F.3d at 59-60; Neverson, 366 F.3d at 42. The amended judgment entered June 21, 2004. There have been numerous

extensions in this § 2255 proceeding granted to both sides (if you swallow that Attorney Stone's filings are fairly attributable to Fenton at this stage). There would, of course, be a prejudice to the prosecution should the § 2255 proceeding result in any relief as Fenton's was a complicated prosecution. The prejudice stemming from the need to answer the amended petition is certainly palpable but no more that the ordinary hassle of having to redo the response. This is not a capital case.

Which brings the court to the question of whether or not the merits of Fenton's pro se § 2255 motion should be classified as "dubious." The two grounds that do not involve allegations of counsel ineffectiveness – the secret recording of conversations and the planting of evidence/access to private paper and thoughts – are the types of claims that could have been raised on direct appeal. See Berthoff v. United States, 308 F.3d 124, 127 -28 (1st Cir.2002). However, included in his ineffective assistance claims are challenges to his attorney's conduct apropos both issues. (See Pro se Sec. 2255 Mot. at 7-9, 11-19, Doc. No. 20-3.)

With regards to his claim against the performance of appellate counsel, Fenton argues that she,

> failed to assert "double jeopardy" as a theory, on the issue of "possessing a destructive device in connection with a drug-trafficking offense", in that punishment for violating 18 U.S.C. § 841(i) covered that offense. In addition, petitioner's real property was ordered "forfeited" as punishment for some of the crimes charged. Appellate counsel possessed a viable argument that such forfeiture constituted punishment, and that imposing a prison sentence in addition to the forfeiture violated the double jeopardy clause of the Constitution.

(Id. at 5.) As to both facets of this claim the decision of the First Circuit on direct appeal bears witness to counsel's ability to get the court to thoroughly address Fenton's "multi-

13

dimensional challenge" that had four layers.  See United States v. Fenton, 367 F.3d 14 (1st Cir. 2004).

With respect to the first element of this challenge to appellate counsel's performance the Seventh Circuit recently rejected the precise argument:

> Finally, Smith argues that his convictions under 18 U.S.C. § 844(i) and 18 U.S.C. § 924(c)(1)(A) punished him twice for the same conduct and thus violated the Fifth Amendment protection against Double Jeopardy. He acknowledges correctly that this argument has been rejected. A cumulative sentence does not run afoul of the Double Jeopardy Clause when at a single trial a defendant is convicted under two statutes and Congress has authorized cumulative sentences for violations of those statutes. See Missouri v. Hunter, 459 U.S. 359, 368-69 (1983); United States v. Handford, 39 F.3d 731, 733-34 (7th Cir.1994). Smith concedes that he raises this issue only to preserve it for Supreme Court review, and it has been preserved.

United States v. Smith, 502 F.3d 680, 691 (7th Cir. 2007); accord United States v. Nguyen, 117 F.3d 796, 797 (5th Cir. 1997) (rejecting same challenge); United States v. Mathews, 36 F.3d 821, 823 (9th Cir. 1994) (rejecting same challenge); see also United States v. Strickland, 261 F.3d 1271 (11th Cir. 2001) (rejecting double jeopardy challenge involving § 844(d) and § 924(c)).

As to the second issue raised in this claim, it is true that the criminal forfeiture is part of the punishment Fenton received but he received it after the jury made the necessary findings as part of Fenton's single trial.  It is crystal clear that counsel could not make a viable double jeopardy argument that the in rem forfeiture ran afoul of the double jeopardy clause.  His argument is even weaker than those faced with forfeiture in a civil proceeding.  See United States v. Ursery, 518 U.S. 267, 292 (1996) ("We hold that these in rem civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause."); United States v. One Parcel of Real Property with Buildings,

Appurtenances, and Improvements, Known as 154 Manley Road, Located in Town of Burrillville, R.I., 91 F.3d 1, 1 (1st Cir. 1996) (per curiam). Appellate counsel was wise not to pursue these double jeopardy claims.

This leaves Fenton's nineteen ineffective assistance of trial counsel claims. Because the United States focused on the grounds in Fenton's 'counseled' motion in responding to this motion to reopen, it has not addressed the merits of the claims except the first three which relate to counsel's efforts vis-à-vis presenting Fenton's health issues in the various stages of the criminal proceeding. For the reasons stated in the United States' motion for summary dismissal (see Mot. Summ. Dismissal at 33-34), I conclude that these three claims -- subsections (a), (b), and (c) of Fenton's pro se memorandum -- are dubious. I also conclude that Fenton's claims against trial counsel for not making certain legal arguments are not worthy of further consideration because they have no merit and Fenton has no prospect of meeting either the performance or prejudice prongs of Strickland v. Washington, 466 U.S. 668, 687-88 (1984); these claims are those contained in subsections (k), (1), (m), (n), (o), and (r) of Fenton's pro se memorandum. As to the remaining ten claims, these are the type of claims that I would rarely dismiss without consideration of the United States' discussion of the merits and presentation of any record evidence that refutes his claims. I am skeptical of some of the factual allegations made by Fenton in this claims but his 28 U.S.C. § 2255 form petition is signed under penalty of perjury and Fenton's "see attached" with regards to his first ground incorporates those claims articulated in his attachment under his sworn oath. I also note that the United States often knows a great deal more about the factual basis - or lack thereof—for these types of claims than I can discern from the court's criminal

15

record. In addressing these claims the United States need not reiterate the background of the case provided in its original motion for summary dismissal but focus on the meat and bones of the remaining claims.

I consider the above to be an adequate analysis of the totality of the circumstances surrounding the question of equitable tolling in this case. See Kicklighter v. United States, __ F.3d __, __, 2008 WL 2421728, *4 -5 (11th Cir. June 17, 2008) (remanding for consideration of an equitable tolling/attorney misconduct claim); See Benitez v. United States, 521 F.3d at 635-36 (remanding, in part, for an equitable tolling determination); compare United States v. Petty, __ F.3d __, __,2008 W L 2315662, 2 -5 (5th Cir. June 6, 2008) (concluding that the district court's decision not to apply the equitable tolling doctrine was not an abuse of discretion). I combine the Rule 60(b) motion issues with the inevitable equitable tolling question in a recommended decision in the hopes of moving this matter forward as expeditiously as possible.

### *Conclusion*

For the reasons above I recommend that the Court grant the motion to reopen Fenton's 28 U.S.C. § 2255 proceeding and give the United States sixty (60) days to answer so much of the pro se § 2255 petition as alleges ineffective assistance in subsections (d),(e), (f), (g), (h), (i), (j), (p), (q) and (s). I recommend the remainder of the pro se petition be summarily dismissed.

### NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions
entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by
the district court is sought, together with a supporting memorandum,
within ten (10) days of being served with a copy thereof. A responsive

memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 30, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge